Good afternoon. We have one case up for oral argument this afternoon. McGee v. West and Macon County Sheriff's Department, Appeal No. 25-1855. Mr. Gordon, whenever you are ready, good afternoon. Good afternoon. May it please the Court. My name is Rahsaan Gordon, and I am an attorney, or I am the attorney for plaintiff appellant Felita McGee. I would like to reserve five minutes for rebuttal. This appeal turns on jury function. The district court granted Rule 50 after the county stipulated to the central structural facts. In 2015, the jail had no written diabetic care protocol. The jail had no written emergency transport procedure, and the jail had no written rule telling jail staff or medical staff who could call an ambulance and when. These are not malpractice facts. These are institutional facts. The point is narrow. Plaintiff is not asking this court to hold Macon County liable simply because Nurse Bates or Dr. Braco or even any of the other individual jail staff or correctional officers made bad medical decisions. Excuse me, made bad medical decisions. Mr. Gordon, for your Monell claim, I think you agreed that there wasn't any evidence of other inmates who had died or become ill under a similar scenario. Do you agree with that? That is correct, Judge. So you're relying on the obviousness? Correct, Judge. This is not a pattern case. This is an obvious risk case. And as you know, the Supreme Court has said that that's a very, very high standard to meet. What is your strongest evidence here of the obviousness element? Sure, Judge. And really, this really gets to the crux, at least as it relates to the Rule 50 issue, and it's intertwined really with the expert exclusion issue. In looking at case law in this circuit nationwide, I've not seen a jail where there's been stipulation to no written protocols as it relates to the treatment of a chronic care condition. But especially no admission during the course of litigation, and then evidence, unrebutted evidence at trial from the most knowledgeable representative of the medical contractor that there were no health care policies whatsoever at the jail during 2015. So in terms of obviousness, this case is not asking Sheriff Snyder to have somehow become a medical professional. It is simply suggesting that there is an administrative function as well. It is obvious that if you don't take base-level precautions for people in your custody, people who don't have the ability to seek their own help… But they've brought on a medical provider, and the jail is not trained to provide extensive medical care. So they contracted with and brought on a medical provider. You have to show that nonetheless, the risk of the constitutional violation was plainly obvious to the jail. What's your strongest argument of that? Because I know that diabetes is serious, and there was a lack of a policy, but that alone isn't going to get you to plainly obvious. Well, Judge, it is… A jury could have decided, especially with the support of the expert testimony, that if you fail to plan for the coordination of treatment for individuals with chronic conditions, in this case, particularly diabetes, where there is admission, stipulations, that there was no plan in place. There were no protocols. There were no policies. That if you fail to plan for this category of people, it's common. It's a common chronic condition, but if it's not managed well, then it can become deadly. And so that is obvious. It is similar to… I don't know the person who manages this building, for example. They don't have to be a firefighter to understand there needs to be an evacuation plan. That's obvious. You have people coming into this building. You have to figure out a way to safely evacuate them in the event of fire. We're not asking for the sheriff's department or any sheriff in this circuit or nationwide to be responsible to take blood pressure, to administer insulin. However, the duty is non-dedicable. So sure, the sheriff is not a doctor. The sheriff is not a medical professional. So the sheriff hires a medical contractor. In this case, it was an inexperienced medical contractor. The evidence shows that they had no prior experience. Now, after the sheriff hires a medical contractor, then the question becomes, does that somehow delegate the sheriff's or the county's responsibility to have adequate medical care delivery at his jail? Does it satisfy his function simply by hiring a medical contractor? And in this case, one who was inexperienced. And then with the knowledge, the admitted knowledge, the stipulated knowledge that there was no plan in 2011, in 2012, in 2013, in 2014, 2015, a jury could have found that it is obvious that if you don't have an administrative plan, a pathway to coordinate care for the chronically ill in this particular case, the category being diabetics, that at some point, yes, disaster will happen. And that's precisely what happened in this case, from intake until the fifth day of him being in custody to his death. Mr. Gordon, can I ask you about the relationship between the claims that the plaintiff brought against Decatur Hospital, the medical provider, versus the sheriff's office, the county? So the plaintiff asserted a 1993 Monell claim against the medical provider as well. Is that correct? That is correct. Okay. And now you're asserting a Monell claim against the sheriff. And you cited the case King. And in King, we've held that where a county basically delegates all of its medical responsibilities to a medical provider, the plaintiff can sue the county for the actions or inactions of the medical provider. But here, you sued the medical provider as well, right? Correct. And it seems to me puzzling that you can sue both the medical provider under Monell as well as the sheriff under Monell for delegating the authority to the medical provider. It seems to me they're kind of the same claim, aren't they? And the reason I ask is because in some ways I can read your brief to ask us to impute the inactions of Decatur to the sheriff because the sheriff completely delegated his responsibilities. But on the other hand, I can see you arguing that whether or not we impute Decatur's actions to the sheriff, the sheriff on his own right based upon what he should have done and his lack of supervision of the medical provider provides the Monell claim. And I'm wondering which of those theories you're proceeding under. Sure, George. That's an excellent observation. Plaintiff actually sued both originally under Monell theories. Currently, plaintiff is not seeking to impute the actions of the hospital, the medical contractor, or its employees or any other employees to the jail. The jail has always had, in plaintiff's perspective, has always really had the primary responsibility. It is mandated by the law that the Illinois jail standards require the jail to have certain base level. So your theory here is not that we should look at the actions or inactions of Decatur and impute them to the sheriff's office. What you're saying is putting that to the side, the sheriff's office had independent duty to monitor the medical provider. Absolutely. That is the argument that plaintiff is making, and it goes to the fact that if the jail, if the court would have found, if the district court would have found that the jail had delegated policymaking authority to DMH, it would be a different argument. We would look to impute because there would be a finding that there was a delegation. However, what the court found was that the jail, it retained its policymaking authority. Well, somebody has to be responsible for the administration of the jail. It is the jail, and we're not asking the jail to do medicine. I see that I'm encroaching into my time. I just wanted to touch, if it's okay, briefly on the exclusion of the experts. Can you prevail here without your expert? Yes. However, it makes it more challenging, and I think in an unfair and unnecessary way. But yes, I think the evidence is overwhelming to the extent that there's no policy, no health care policy. It's stipulated there are no diabetic protocols, plans, processes, procedures in place. That is enough for a jury to infer. It is not the district court's role to weigh the evidence. That is the jury's right. To the extent that we have stipulations that there is no policies in place, including with emergency transport, I think that is enough. Didn't Dr. Bracco testify at trial that there was a protocol for nurses to give insulin based on morning and afternoon glucometer checks? That was something he testified to at trial, that there was a process that he thought was in place. It was not written. And again, this is weighing the evidence. This is the evidence that would have been beneficial to Macon County. We had counter evidence to that. And again, stipulation that there was no coordination, nothing in writing, nothing to help people from shift to shift know what to do when somebody came in. Up until if somebody, God forbid, was in some type of medical distress. When is jail staff and or medical staff authorized to summon emergency transport? None of this stuff was in writing. None of it. You're well into your rebuttal time. If you want to save it, it's up to you. Yes, I would like to save it. Yes. I would like to save it. Thank you, Judge. I would like to have the district court's order vacating the case sent back to remand. You'll get a chance to come back. Okay, thank you, Judge. For your remaining three minutes. All right, thank you. Mr. Adkins. Good afternoon. Good afternoon. May it please the court. My name is Michael Adkins. I'm here today asking the court to affirm the thorough and well-reasoned judgment of the district court in favor of the Macon County Sheriff's Department. I'll be discussing the portion of the judgment relating to the district court's granting of the motion for judgment as a matter of law on the Monell claim. My colleague, Mr. Drinkwine, will be addressing the parts of the judgment relating to plaintiff's claims, state law claims, against Randall West for battery. During trial, plaintiff presented five days of evidence in her case in chief following which Sheriff's Department moved for a motion for judgment as a matter of law on the Monell claim. In a detailed 34-page opinion, the district court granted the motion finding that plaintiff failed to submit evidence from which a reasonable jury could find that the Sheriff's Department was deliberately indifferent to the inmate's right to adequate medical care and also that there was no evidence that any official policy of the Sheriff's Department was the moving force behind Carter's death and injury. The district court was correct on both points. Moreover, there's no basis from which the court can conclude that the excluded evidence of which plaintiff now complains would have made any difference in the outcome. Because the 1983 claim against municipality requires that the entity itself directly cause the constitutional deprivation, the courts have consistently required a rigorous standard of fault and causation in order to prevent the claim from, as the court has put it in the past, backsliding into one for responding at superior or vicarious liability. Plaintiff's proof of trial failed to meet that minimum threshold, to meet those rigorous standards. As such, it was correct for the district court to exercise its gatekeeping function of the outer limits of Monell liability and to direct the verdict for the defendant. Throughout the litigation of the case and the trial, it wasn't easy for either the district court or the defendant to discern what actions or inactions of the Sheriff's Department that the plaintiff was alleging was the basis for the Monell claim. Plaintiff's submissions here seem to limit her claim to one based on inaction rather than action. Judge St. Evie pointed out is the hardest, hardest and most narrowest path that a plaintiff has to liability under Monell. This court's precedents do, however, leave that narrow path for a single incident where there's evidence that it is blatantly obvious that the, I guess, entity's current program, the way I would put it would be is destined for constitutional failure. It's the notice element, right? And you asked Judge St. Evie, you asked counsel what was his best evidence of notice. And as I sat, all I heard was the policy gap itself is the only evidence of notice. In other words, we already know there's no prior constitutional violations. There's no evidence of bad outcomes for diabetics that may have fell short of a constitutional violation, but just something that would have alerted the sheriff that his current program was destined for constitutional failure. No evidence that the doctors or nurses were treating diabetics who are inmates in the jail unprofessionally or inappropriately. There's no evidence that the medical personnel at the jail weren't finding out that people coming into the jail had diabetes. Mr. Atkins, does the sheriff have, does the county have any duty to monitor whether or not the Decatur was complying with its contractual obligations to provide medical care? So, for example, let's hypothetically say that a contract between the county and the medical provider states that the medical provider needs to follow certain professional standards promulgated by the AMA or some professional body. Does, and hypothetically say that the county does nothing to monitor those contractual obligations? Doesn't really care. Does that pose a constitutional problem? The Constitution, I would argue, doesn't impose any duty to monitor a contract with a contractor. Does that mean that the county can just hire a medical provider and then just kind of wash the hands of it and let the medical provider do what it does and so can never be responsible for anything? No, certainly not. The constitutional duty. So, and that's my question. What is the level of the constitutional duty that the county has to ensure that the medical provider that it hires, right, is doing what it needs to be doing so that the county maintains its constitutional obligations? Presumably one way is to incorporate standards and requirements in a contract, but you've told me that the contract, that that's not a way, that the county has no constitutional obligations to ensure compliance with the contract. So what other obligation does it have, if any, to oversee the medical provider? I think when I talk about, I think the answer to your question is already covered by the Monell framework and generally at a high level. So we look at the constitutional duties. The constitutional duty is to provide adequate health care to people over which you have custody of. So that's the limit of the constitutional duty. Now, when we talk about municipal liability for the breach of that duty, we talk about direct action, which we have to under Monell. So what is, and the way Monell handles that is to talk about notice, right? So notice that the program isn't working and it could be different in any case. But to say there's, the duty in that case is you've sort of framed duty and I'm distinguishing between what would be a constitutional duty and what would be the sort of duty that would arise from notice of a problem. I guess what I'm trying to figure out is the ostrich problem, right? Like, so if the county hires a medical provider to, and delegates all of its authority with regard to the medical care of inmates to the hospital, right? And then says, and has these requirements in the contract, but then tells the hospital, you know what, and kind of takes a very hands-off approach, okay? Doesn't do anything to monitor the, whether or not the hospital is complying with the contract. Doesn't really care whether or not the hospital is complying with all of its requirements and just says, well, we hired them. That's all we need to do for Monell. We don't hear about anything. And so, you know, we hear no evil, see no evil. We're good for Monell. Is that a viable defense? Certainly not. And I don't think that's the defense we're making here. The defense we're making here, I think. Well, I guess then my question is, well, what is the obligation? That's what I'm trying to get. You said it's between, it's not zero and it's not that they have to do kind of a daily review of the contract compliance, which I agree with. But then where, what is the obligation? The obligation would be to respond reasonably when notice arises that there's specific deficiencies that are happening. What about absence of notice? There has to be kind of an obviousness, right? And so in a situation like this, what would give me a hypothetical situation where a county might be obligated under Monell under 1983 when it doesn't have a notice of any contractual violations or any constitutional violations that the health care provider is providing? I can see I'm out of time. No, I'm just kidding. I'll answer your question. Oh, boy. See, that's what I'm kind of struggling with. Right. And it's a difficult question. And I think that's where the line, obviously, it's a difficult question of line drawing that I don't envy your honors having to make. I think the better rule is that gaps in and of themselves are not sufficient to give policy gaps or inactions aren't sufficient in and of themselves to provide notice. In other words, specifically, what's something? Something externally. If there was evidence that the sheriff was ignoring, like you mentioned the ostrich. If there was evidence that there was 50 memos that the sheriff just never bothered to read about diabetics having problems with ketoacidosis in his jail, I would say, sure, he should have done some, there should have been some reasonable response to those. I mean, but here, short of the policy gap in and of itself, we have nothing. And I think the court for its time and just ask that you affirm the district court. Thank you, Mr. Atkins. Thank you, Mr. Drake. May it please the court. And good afternoon. On behalf of officer Randall West, the jury was properly instructed that to sustain her battery claim plaintiff had to prove that officer West made unauthorized contact with Mr. Carter with the intent to harm him or with utter indifference to our conscious disregard for his safety to determine whether plaintiff met that burden. The jury needed to consider the contact that officer West made with Mr. Carter in tandem with the well settled rule that not only permits, but encourages non medical jail personnel to defer to the professional medical opinions of doctors and nurses. So the challenged instruction drawn verbatim from this court's opinion in persona properly instructed the jury as follows. Correctional officers are not constitutionally obligated to override the judgment of medical professionals unless they have reason to know that an inmate is receiving inadequate treatment. This remains true when an inmate is in obvious distress and even when the medical staff has misdiagnosed the inmate or worse accused him of faking a very real illness. You didn't ask for that instruction. That that's something the district court came up with. Judge Bruce on his own. I think that's right. Your Honor. There was an objection to it and we took the position that it should be given. And Judge Bruce overruled the objection. Well, he said it would be error not to give it. Right. But what he did in lifting from our previous opinion in this case, which was a qualified immunity appeal on federal constitutional violation, the deprivation of medical care claim. It has nothing to do with the battery claim. So why was it appropriate for him to give this doctrinal gloss? Officer West would respectfully disagree, Your Honor. The the purpose of the instruction is because it informs the mental state that's required to prove willful and wanton conduct under Illinois law. The the in evaluating whether the force used was authorized on the one hand or applied with an intent to harm or a conscious disregard for Mr. Carter's safety on the other. The jury needed to know that Officer West was entitled to rely on nurse Bates. That's that's not a state law principle. That's a federal law principle that is a doctrine within a failure to administer medical care claim for constitutional purposes. And in particular, as seen through the qualified immunity lens in our previous opinion. But it's a substantive legal doctrine that applies to the constitutional claim for failure to administer medical care. And the battery claim is completely independent of that claim. It's an assault, a physical assault claim. It has nothing to do with the failure to render care. In the latter context, when an officer, a corrections officer, is accused of a constitutional violation for failure to render medical care. Officers are entitled to that doctrine that they may defer to medical professionals on what is medically required to treat a particular condition. That has no bearing on a battery claim under state law. Your Honor, I would agree with everything you just said, except for respectfully that last part. Officer West's contention is it has something to do with the battery claim because it informs his mental state. They have to prove that he acted with intent to harm or with conscious disregard or for his well-being. And in order to do that, the jury had to know that he's entitled to rely on the opinion of the nurse that Mr. Carter's faking. If they don't know that, they can't properly evaluate what his mental state is with respect to the force that he used. If the jury believed, as they must have, that Carter was or that West believed that Carter was faking because Nurse Bates told him he was faking, then they could also conclude that Officer West thought that the man was disobeying his orders to get up and stand up so he could move him out of the medical unit. Isn't that a factual question for the jury? It is. And this instruction essentially turned it into a legal determination that he was entitled to rely on the nurse's opinion that the victim here was faking his illness. I don't think the 14th Amendment goes away, Your Honor, just because we're talking about a state law claim. It does, actually, because the state law claim is completely separate. Right, but it's always and everywhere true that the 14th Amendment not only permits Officer West to rely on the nurse's opinion, it encourages him to do so. For a medical care claim, not for a battery claim. Well, we would argue that that mental state... You can make that argument to the jury as a factual matter, that he was deferring to the nurse's judgment and that's why he was kicking the victim and squashing his hand, I think it was, and trying to get him to stop faking and get up. And that is a valid factual argument about his state of mind, but this is tantamount to a directed verdict, this instruction, saying he's entitled as a legal matter to defer to the nurse's judgment, rather than letting the jury decide as a factual matter whether his testimony that he was relying on the nurse's advice goes to his state of mind as a factual matter. Respectfully, Officer West maintains that the mental state, in order for them to, without knowing that the law provides that he's allowed to rely on her medical opinion... For constitutional purposes, not for state law battery purposes. There's nothing so far as I know in Illinois law that adopts that same principle for purposes of assessing a defendant's state of mind in a battery case, a battery tort case. There's certainly no case where this issue has come up in the context of instructing a jury on state law battery. Illinois courts have not adopted the federal constitutional standard as a matter of state tort law. I looked for something, and this wasn't briefed, but the willful and wanton requirement in this context is not a requirement for state law battery in Illinois or anywhere else. It's an additional element that needs to be proved when a public official, a public employee, is accused of battery in order to get over, to overcome the state tort law immunity. None of this was briefed. It might have been, but it wasn't. And so there might be an argument that because the willful and wanton element essentially parallels the deliberate and different state of mind requirement for federal qualified immunity law in this context that this might have been appropriate. I still question that because nothing in state law says so. And without a state decision adopting that view, we wouldn't imply it as a matter of state law as a federal court sitting essentially in diversity jurisdiction over this claim. Right. Officer West's position is that because the requirement was to prove utter indifference or conscious disregard for Mr. Carter's safety, that the jury has to know that he's entitled to rely on the medical judgment of the nurse. But that's not a correct statement of the law in the state of Illinois. If that were a correct statement of the law in the state of Illinois, then certainly the jury would have to know that. But the jury should not be instructed on that principle if the Illinois courts have not adopted it as a matter of state battery law or as a matter of state tort immunity law. When we're instructing a jury on excessive force in a garden variety in 1983 came in, there's a tag-along battery claim. We still instruct the jury that officers are allowed to use force for purposes of maintaining discipline and so forth in the jail, and that they can use force, just not unreasonable force. And that law you might call a constitutional standard under the Fourth Amendment. It's still being applied to state law battery because it doesn't, factually, it doesn't change. That officer still can't use excessive force under state law or under federal law. And Mr. Officer West would argue that it doesn't change that he can rely on Nurse Bates' professional medical judgment that the man's faking. Granted, it was wholly wrong, but under this court's opinion and the King v. Kramer case, the officer gets to rely on the medical judgment of the nurse. And unless something's out of bounds, he defers to her opinion. So Officer West's position is that's still a proper instruction in order for the jury to evaluate his mental state and decide whether he intended to harm when he applied force or whether it was done with utter indifference or conscious disregard for his safety. We would ask the court to affirm the district court's judgment entered on the jury verdict in favor of Officer West. Thank you, Mr. Trayclin. Thank you, Mr. Gordon. Thank you. I'll start with the last point as it relates to the battery instruction. And West argues for, as Judge Sykes pointed out, argues for an instruction that it did not offer. This was a state law battery claim. This was not a claim that involved state law battery and a tag-along excessive force claim as counsel used as a hypothetical. This was under Illinois law. Plaintiff is very clear on the decision of this court that the officers in this case were entitled to defer to the medical judgment of the medical professionals at the jail. The state law battery claim deals with the fact, the unrebutted fact, that West kicked this man while he was on the ground. The unrebutted fact that West stepped on the man's hand and applied the pressure of his body weight. You don't dispute that West could have argued to the jury that he was entitled to rely on the medical judgment in making these determinations. I actually think his counsel did argue that. And of course, that would go to a state of mind. He could have argued a lot of different things. But in terms of being able to benefit from law that is inapplicable to the claim, you speak about confusion or gloss that he could rely and somehow the jury now believes somehow this is okay. It has nothing to do with his reliance upon this nurse. That's our position, but we could argue that in front of the jury. But as far as what the instruction of the court should have been, people bring state law civil battery cases every day in Illinois. And the instruction is very clear. It didn't need any amendment by the judge. But there is the heightened state of mind requirement because this is a battery claim against a public employee. And so under the Tort Immunity Act, that wanton and willfulness element is present. It elevates the factual finding the jury needs to make regarding his state of mind. So it's not just the standard battery element. Sure, sure, Judge, because it involves the public official. But these were the arguments that were made during the trial and the evidence that was introduced. It was not part of any training or protocol or policy to step on a person and get a rise out of them even if you think they're faking. So yes, we established, I believe, that his mindset that it was malicious and it was willfully wanton. Whether or not you're relying upon a nurse or not, they also had an equal opportunity to make the same argument in front of the jury. But they didn't have the right to have the benefit of the judge amending an instruction to suit them. So for that reason, we would like for that order – excuse me, the jury's determination to be vacated in this matter to be remanded for trial. The battery claim and also on the Monell claim. Thank you, Mr. Gordon. Thanks to both sides. We will take the case under advice. Thank you. Thank you.